UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KUMMER ENTERPRISES, INC.
f/k/a/ HBE CORPORATION,

    Plaintiff,

v.                                                     CASE NO. 1:09-cv-109

VALLEY FORGE INSURANCE         HON. ROBERT HOLMES BELL
COMPANY,

    Defendant.
_____/

## OPINION

On February 10, 2009, Plaintiff Kummer Enterprises, Inc., f/k/a HBE ("HBE") filed a complaint seeking a declaration that it is entitled to coverage under an insurance policy issued by Defendant Valley Forge Insurance Co. (Dkt. No. 1.) Specifically, Plaintiff is seeking a declaration that Defendant is obligated to provide its defense in a personal injury action brought against Plaintiff by David Opperman (Count I), and a declaration that Defendant is required to indemnify Plaintiff for any damages awarded to Mr. Opperman (Count II). This matter is before the Court on Plaintiff's amended motion for summary judgment on these two claims for declaratory relief. (Dkt. No. 24.)

### I. Factual Background

In 2005, Plaintiff was awarded the general contract to build an addition to the Ingham

Regional Medical Center in Lansing, Michigan. Plaintiff entered into a subcontract with WPM, Inc. ("WPM"), in which WPM agreed to excavate the basement for the addition to the hospital. (Dkt. No. 25 Ex. 2.) As part of the subcontract agreement, WPM appears to have assumed responsibility for the safety of its own employees at the work site,[1] and agreed to indemnify Plaintiff for damages resulting from WPM's failure to maintain safe working conditions.[2]

The subcontract agreement also required WPM to obtain comprehensive general liability insurance, and to name Plaintiff as an "additional insured" under that policy. (*Id.* at Ex. 2 ¶ B-1.) WPM obtained Policy No. TCP2081484133 ("Policy") from Defendant. The Policy required Defendant to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'. . . to which this insurance applies," and that Defendant would have the "duty to defend the insured against any 'suit' seeking those damages" (collectively referred to as "coverage"). (*Id.* at Ex. 4 ¶ 1(a)(1).)

Section II of the Policy, entitled "who is an insured," specifically included the five entities designated in the declarations of the Policy as "named insureds" entitled to coverage

---

[1] Paragraph 9 of the "General Issues" section of the subcontract states that WPM "shall, at all times, be solely responsible for the safety of their personnel and operations and for compliance with the recommendations of MIOSHA and OSHA as well as all other applicable laws and ordinances relating to safety." (Dkt. No. 25 Ex. 2 p. 4.)

[2] Paragraph H-2 of the subcontract provides that WPM is to "assume all responsibilities of HBE with respect to the Subcontract Work, and to indemnify, defend and save HBE harmless from any and all penalties, damages or other losses resulting from the failure of WPM to perform this Subcontract in accordance with the aforementioned Acts or other more stringent requirements." (Dkt. No. 25 Ex. 2 p. 13.)

2

under the Policy. (*Id.* at Ex. 4 § 2.) WPM is designated as a named insured. (Dkt. No. 26 Ex. 1 pp. 1, 6.) Plaintiff is not designated as a named insured. The parties also executed a "Blanket Additional Insured Endorsement" ("Endorsement") which amended Section II of the Policy to include as an "insured" any person or entity eligible under the requirements set forth in the Endorsement. (Dkt. No. 25 Ex. 5.) In addition, one provision of the Policy extends coverage to "liability for damages . . . assumed in a contract or agreement that is an 'insured contract.'" (*Id.* at Ex. 4 § I(2)(b)(2).) Section 5 of the Policy defines an "insured contract" as a contract in which a named insured "assume[s] the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." (*Id.* at § V(9)(f).)

On December 5, 2005, David Opperman, a WPM employee, injured his knee when he stepped in a caisson hole at the job site. On September 11, 2007, Mr. Opperman sued Plaintiff, and several other parties, for his injuries, alleging that Plaintiff failed to maintain safe working conditions. (Dkt. No. 26 Ex. 2 (Opperman Complaint).) Mr. Opperman did not include WPM as a defendant in the lawsuit, apparently because his recovery against WPM was limited to worker's compensation. However, on February 15, 2007, Plaintiff asserted a third-party complaint against WPM for indemnification in the Opperman lawsuit.

Though Plaintiff is not designated in the declarations as a named insured under the Policy, it nevertheless believes that it is entitled to coverage under the Policy. On two separate occasions, Plaintiff tendered its defense in the Opperman lawsuit to Defendant, and

3

requested indemnification under the Policy for any potential liability. Defendant refused both requests. Plaintiff now seeks a declaration from this Court that Defendant is required to provide its defense in the Opperman lawsuit and to indemnify it for any damages that Mr. Opperman may be awarded. The parties involved in the Opperman lawsuit have agreed to postpone the trial date until this Court decides the insurance coverage issues presented by Plaintiff's present motion.

## II. Law and Analysis

Plaintiff is entitled to summary judgment on its claim for coverage "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

As mentioned, Plaintiff seeks summary judgment on its claim for indemnification as well as its claim for a defense. The legal standard governing Plaintiff's claim for indemnification is more burdensome than the legal standard governing Plaintiff's claim for a defense. To be entitled to summary judgment on its claim for indemnification, Plaintiff must demonstrate that, as a matter of law, damages assessed against Plaintiff in the Opperman lawsuit *will be* covered by the Policy. On the other hand, to be entitled to summary judgment on its claim for a defense, Plaintiff must demonstrate that, as a matter of law, there is a *possibility* that damages assessed against Plaintiff in the Opperman lawsuit will be covered by the Policy. *Auto-Owners Ins. Co. v. Harrington*, 565 N.W.2d 839, 840

(Mich. 1997) (citing *Frankenmuth Mut. Ins. Co. v. Piccard*, 489 N.W.2d 422 (1992) (Riley, J., plurality opinion)); *Regal Homes, Inc. v. CNA Ins.*, 171 P.3d 610, 615 (Ariz. App. 2007); *BP Air Conditioning Corp. v. One Beacon Ins. Group*, 33 A.D.3d 116, 120 (N.Y. App. Div. 2006).

Plaintiff advances two independent theories in support of its claim that it is entitled to coverage—both indemnification and a defense— under the Policy. First, Plaintiff argues that it qualifies for coverage because the subcontract between Plaintiff and WPM is an "insured contract" within the meaning of the Policy. Second, Plaintiff argues that it qualifies for coverage as an additional insured under the Endorsement.

For the reasons that follow, the Court holds that, as a matter of law, there is a possibility, though not a certainty, that damages assessed against Plaintiff in the Opperman lawsuit will be covered by the Policy. Thus, Plaintiff is entitled to summary judgment on its claim for a defense, but not on its claim for indemnification. However, because Plaintiff's entitlement to indemnification from Defendant depends on questions of liability and damages that will be resolved in the Opperman lawsuit, but not before, the Court will permit Plaintiff to renew its motion for summary judgment when these questions have been answered upon the close of the underlying Opperman lawsuit.

A. Insured Contract

Plaintiff first argues that it qualifies for coverage because the subcontract between Plaintiff and WPM is an "insured contract" within the meaning of the Policy. This argument is a red herring.

As an initial matter, the Court notes that the subcontract between Plaintiff and WPM is indeed an "insured contract," at least to some extent. Section V(9)(f) of the Policy defines an "insured contract" as an agreement "under which [WPM] assume[s] the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." (Dkt. No. 25 Ex. 4 § V(9)(f).) As discussed above, the subcontract between HBE and WPM contains a number of provisions through which WPM assumes the tort liability of HBE. For example, ¶ 9 of the subcontract states that WPM "shall, at all times, be solely responsible for the safety of their personnel and operations and for compliance with the recommendations of MIOSHA and OSHA as well as all other applicable laws and ordinances relating to safety." (*Id.* at Ex. 2 p. 4.) In addition, Paragraph H-2 of the subcontract provides that WPM is to "assume all responsibilities of HBE with respect to the Subcontract Work, and to indemnify, defend and save HBE harmless from any and all penalties, damages or other losses resulting from the failure of WPM to perform this Subcontract in accordance with the aforementioned Acts or other more stringent requirements."(*Id.* at p.12.) Because WPM assumed the liability of Plaintiff in the subcontract, at least to some extent, the subcontract between WPM and Plaintiff is an insured contract.

However, it does not follow that, because the subcontract between Plaintiff and WPM is an insured contract, Plaintiff is entitled to coverage under the Policy. The "insured contract" provision, which extends coverage to "liability for damages . . . [a]ssumed in a contract or agreement that is an 'insured contract,'" appears in the Policy as an exception to

6

an exclusion. (*Id*. at Ex. 4 § I(2)(b).) Thus, it does not actually expand the terms of the contract beyond what they would otherwise have been without the exclusion. Without the exclusion, under no circumstances is an entity entitled to coverage unless the entity qualifies as "an insured" under Section II of the Policy. (*Id*. at § I(1)(a).) Plaintiff concedes that, even under the "insured contract" provision, only entities that qualify as "an insured" under Section II are entitled to coverage under the Policy. (Dkt. No. 27, Pl.'s Reply 7 ("All the insuring Agreement requires for coverage is that an 'Insured' (here, HBE) have liability for damages assumed in an 'insured contract.'"). To qualify as "an insured" under Section II of the Policy, an entity must be listed as a named insured in the declarations, or satisfy the requirements for additional insured status set forth in the Endorsement. Plaintiff does not claim that it is listed as a named insured in the declarations. Thus, even though the subcontract is an insured contract, at least to some extent, Plaintiff is not entitled to coverage under the Policy unless Plaintiff qualifies for coverage as an additional insured under the Endorsement, the issue to which the Court now turns.

B. Additional Insured

Plaintiff next argues that, although it is not listed as a named insured in the declarations of the Policy, it is nevertheless entitled to coverage under the Policy because it qualifies as an additional insured under the Endorsement. An entity qualifies as an additional insured if: (1) a written agreement required a named insured to add the entity to the Policy as an additional insured; (2) the written agreement was in effect during the term of the Policy; and (3) the written agreement was executed prior to the occurrence of the

7

injury for which the additional insured seeks protection under the Policy. (Dkt. No. 25 Ex. 5 § A.) These three requirements are met with respect to the subcontract agreement between Plaintiff and WPM, and Plaintiff therefore should be given additional insured status: the subcontract agreement required WPM to add Plaintiff to the Policy as an additional insured; the subcontract agreement, executed in July of 2005, was in effect during the term of the Policy, which ran from December 31, 2004, to December 31, 2005; and the subcontract agreement, executed in July of 2005, was executed prior to Mr. Opperman's injury, which occurred on December 5, 2005. However, even if an entity qualifies as an additional insured, the coverage available to the entity is limited by two additional relevant provisions contained in the Endorsement: (1) the "Your Negligence" provision contained in Section B(1); and (2) the "Excess Insurance" provision contained in Section C(2). *See Auto-Owners Ins. Co. v. Harrington*, 565 N.W.2d 839, 841 (Mich. 1997) ("Interpretation of an insurance policy ultimately requires [an inquiry into whether] an exclusion applies to negate coverage.").

*1. The Section B(1) Limitation*

Even if an entity qualifies as an additional insured under the Endorsement, the coverage available to the additional insured is limited by Section B(1) of the Endorsement, which states:

> The insurance provided to the additional insured is limited as follows: That person or organization is an additional insured *solely for liability due to your negligence* specifically resulting from "your work" for the additional insured which is the subject of the written contract or written agreement. No coverage applies to liability resulting from the sole negligence of the additional insured.

8

(Dkt. No. 25 Ex. 5 § B(1)) (emphasis added) (hereinafter the "Section B(1) limitation"). The term "your," used frequently throughout the Policy, refers to "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." (*Id.* at Ex. 4 p. 1.)

Plaintiff first argues that Section B of the Endorsement does not preclude Plaintiff from any coverage because the phrase "your negligence" should be read to include Plaintiff's negligence, not only the negligence of WPM. (Dkt. No. 27, Pl.'s Reply at 1-3.) Under this interpretation, regardless of whether the jury in the Opperman matter held Plaintiff liable for its own negligence or for the negligence of WPM, Plaintiff would be entitled to coverage. Plaintiff's argument proceeds as follows: under the Endorsement, any entity that satisfies the three requirements set forth in Section A is classified as an additional insured. (Dkt. No. 25 Ex. 5 § A.) Also under the Endorsement, any entity that is classified as an additional insured is also classified as an "insured." (*Id.* ("WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization [that satisfies these three requirements].").) Under The Policy, the word "your" refers to "the Named Insured shown in the Declarations, *and any other person or organization qualifying as a Named Insured under [the Policy]*" (*Id.* at Ex. 4 p. 1 (emphasis added).) Because the Policy does not specify when a person or organization qualifies as a named insured under the Policy, the Court should assume that all insureds, including additional insureds under the Endorsement, qualify as named insureds. If additional insureds, such as Plaintiff, qualify as named insureds, then the phrase "your

9

negligence" contained in the coverage limitation refers to Plaintiff's negligence, entitling Plaintiff to additional insured status, and coverage, for all of its own negligence as well as the negligence of WPM.

This interpretation is not viable. Specifically, the Court does not agree with Plaintiff that all insureds, including additional insureds under the Endorsement, qualify as named insureds. The Endorsement, and the Policy in general, carve out a difference between a named insured, or an entity that qualifies as a named insured, and an entity that qualifies as an additional insured under the Endorsement. The Endorsement essentially defines an additional insured in terms of its relationship with a named insured. For example, Section A contemplates a contractual arrangement between a named insured and additional insured. (*Id.* at Ex. 5 ¶ A.) Section B contemplates that an additional insured will perform work for the named insured. (*Id.* at ¶ B(1).) At least two distinct parties are required for the contractual and working relationships contemplated by the Endorsement to exist, and it would unduly confuse the effect and understanding of the Endorsement for the Court to conclude that an entity that qualifies as an additional insured also qualifies as a named insured for purposes of the Endorsement.

Because Plaintiff is not entitled to named insured status under the Policy, "your" refers to WPM only. The Section B(1) limitation should read: "[Plaintiff] is an additional insured solely for liability due to [WPM's] negligence specifically resulting from '[WPM's] work' for [Plaintiff] which is the subject of the [subcontract between Plaintiff and WPM]. No

10

coverage applies to liability resulting from the sole negligence of [Plaintiff]." (*Id.*) Thus, to determine the extent of Plaintiff's coverage as an additional insured, the Court must assess the likelihood that liability assessed against Plaintiff in the Opperman matter will be liability due to WPM's negligence.

The underlying Opperman litigation admits of too many possible contingencies for the Court to conclude definitively that Plaintiff will or will not be held liable for WPM's negligence. The underlying Opperman litigation involves six potentially culpable parties[3] and a variety defenses, including assumption of liability defenses, which may or may not be valid. It would be overreaching for the Court to purport to know how the jury will decide the complicated issues of damages and fault allocation in light of the numerous parties involved, their various defenses, and the facts of the case, many of which are unknown to the Court and in dispute. The most provident course is for the Court to allow the jury to decide these issues and then determine whether Plaintiff has been held liable for WPM's negligence after the dust settles.

Because the Court hesitates to make any definitive rulings that require it to anticipate how the jury will decide the issues of liability and damages in the underlying Opperman matter, the Court must conclude that there is a possibility, though not a certainty, that

---

[3]Mr. Opperman sued four parties directly: HBE; Total Foundations, L.L.C.; Christman Constructors, Inc.; and Kebler Plumbing and Heating Co. HBE filed a cross-complaint against Total Foundations and Christman, and a third-party complaint against WPM. (Dkt. No. 27 Ex. 7.) In addition, in its answer HBE alleges that Mr. Opperman was contributorily negligent. (Dkt. No. 27 Ex. 10 p. 5.)

11

Plaintiff will be held liable for the negligence of WPM. For example, if the jury determines that WPM's assumption of responsibility for the safety of the work-site is valid and broad enough to encompass Mr. Opperman's injury, and yet the jury assesses liability against Plaintiff anyway, it seems that this liability would be liability resulting from WPM's negligence. Because Plaintiff has established as a matter of law that there is a possibility that Plaintiff will be held liable for the negligence of WPM, though not a certainty, the Section B(1) limitation precludes Plaintiff from summary judgment on its claim for indemnification, but not its claim for a defense.

*2. The Section C(2) Limitation*

The coverage available to an additional insured such as Plaintiff is also governed by the "excess insurance" provision in Section C(2) of the Endorsement, which states:

> This insurance is excess over any other insurance naming the additional insured as an insured whether primary, excess, contingent or on any other basis unless a written contract or written agreement specifically requires that this insurance be either primary or primary and non-contributing.

(Dkt. No. 25 Ex. 5 § C(2)) (hereinafter the "Section C(2) limitation"). Defendant argues that the Section C(2) limitation precludes summary judgment in favor of Plaintiff on its claim for coverage as an additional insured. Defendant argues that, because there is no "written agreement specifically requir[ing] that this insurance be either primary or primary and non-contributing," the insurance available to Plaintiff as an additional insured must be excess to any other policy providing primary coverage. (Dkt. No. 26, Def.'s Resp. 9.) Defendant further argues that there is a genuine issue of material fact as to whether there are any other

insurance policies that provide primary coverage to Plaintiff with regard to the Opperman lawsuit, such as a policy issued by Plaintiff's insurer directly or by another subcontractor, and for this reason Plaintiff is not entitled to summary judgment on its claim for coverage under the Policy. *See, e.g.*, *BP Air Conditioning Corp. v. One Beacon Ins. Group*, 821 N.Y.S.2d 1, 9 (N.Y. App. Div. 2006) (noting that, when an insurer is merely an excess insurer, it has no "obligation to defend [or indemnify] the additional insured prior to the exhaustion of primary coverage.")

Plaintiff does not, in fact, argue or present evidence that there are no other policies providing Plaintiff with primary coverage. Instead, Plaintiff argues that it is entitled to primary coverage, not excess coverage, under Section C(2) of the Endorsement as an additional insured. In support of this argument, Plaintiff first relies on *Pecker Iron Works of New York, Inc. v. Traveler's Insurance Co.*, 786 N.E.2d 863 (N.Y. 2003).[4] The relevant facts in *Pecker* are nearly identical to those at hand. As required by a construction subcontract, a subcontractor obtained an insurance policy that awarded additional insured status to the general contractor. The policy provided that the coverage available to additional insureds would be excess only, unless the subcontractor "agreed in a written contract for [the]

---

[4] Plaintiff also cites *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 532 P.2d 97 (Cal. 1975). However, that case is readily distinguishable. Like the case at hand, *Rossmoor* involved a subcontractor that was required to procure insurance and list the contractor as an additional insured. However, unlike the case at hand, the policy procured by the subcontractor provided that "an apportionment shall be made if the [contractor] has other insurance against a loss covered by the policy." The "other insurance" clause in *Rossmoor*, which called for proration among competing policies, is completely different than the "other insurance" clause in this case, which calls for excess coverage only, unless a writing states otherwise.

13

insurance to apply on a primary or contributory basis." *Id.* at 863. The subcontract, the only relevant "written contract" between the subcontractor and the general contractor, did not explicitly require that the general contractor receive primary coverage as an additional insured. Nevertheless, the *Pecker* court held that, because additional insureds are generally entitled to the same bundle of rights as named insureds, the subcontract implicitly required that the general contractor receive primary coverage as an additional insured. *Id.* at 864. Several New York state court decisions have since followed *Pecker* in holding that the mere existence of a subcontract requiring the subcontractor to procure insurance and list the general contractor as an additional insured qualifies the general contractor for primary coverage as an additional insured even in spite of a requirement in the procured policy that an additional insured would receive primary coverage only if a written agreement provided so. *See BP Air Conditioning*, 821 N.Y.S.2d at 10-11; *Briarwoods Farm, Inc. v. Cent. Mut. Ins. Co.*, 866 N.Y.S.2d 847, 851-52 (N.Y. Sup. Ct. 2008). Plaintiff urges the Court to follow the *Pecker* rule and determine that the subcontract between it and WPM, though not explicitly, implicitly entitles Plaintiff to primary coverage, and thus satisfies the writing requirement in Section C(2).

However, the Rule announced in *Pecker* appears to be the minority rule. When interpreting a policy that provides only excess coverage to an additional insured unless a written agreement states that coverage will be primary, the majority of jurisdictions seem to require that a written agreement explicitly state that an additional insured's coverage will be

14

primary before extending primary coverage to the additional insured. *Regal Homes, Inc. v. CNA Ins.*, 171 P.3d 610, 617 (Ariz. Ct. App. 2007); *River Village I, LLC v. Cent. Ins. Cos.*, No. 1-08-3529, 2009 WL 4041944, at *8 (Ill. App. Ct. Nov. 20, 2009) (unpublished); *Jessop v. City of Alexandria*, 871 So.2d 1140, 1146 (La. Ct. App. 2004); *Englert v. Home Depot*, 911 A.2d 72, 81-82 (N.J. Super. Ct. App. Div. 2006); *Irene Realty Corp. v. Travelers Prop. Cas. Co.*, 973 A.2d 1118 (R.I. 2009). This rule appears to be more appropriate than the *Pecker* rule because it gives effect to the plain terms of the insurance contract, which, in this case, permit Plaintiff primary insurance only if a writing "specifically requires" it. *See Raska v. Farm Bureau Mut. Ins. Co. of Mich.*, 314 N.W.2d 440, 440 (Mich. 1982) ("Any clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy.").

Plaintiff next argues that, even if Plaintiff is only entitled to primary coverage if a written agreement explicitly provides, the certificate of insurance issued to Plaintiff by WPM[5] clearly states that Plaintiff's insurance under the Policy will be primary, and that the certificate of insurance thus satisfies the Section C(2) precondition to primary insurance. The certificate of insurance does provide that the coverage under the Policy available to Plaintiff as an additional insured "is primary and non-contributory with respect to all work performed by [WPM]." (Dkt. No. 25 Ex. 3.) However, the certificate of insurance also provides "[t]his certificate is issued as a matter of information only and confers no rights upon [Plaintiff].

---

[5] The certificate of insurance is the document that confirms that WPM obtained the insurance that it was required to obtain under the subcontract agreement.

This certificate does not amend, extend or alter the coverage afforded by the policies below." (*Id*.) Because the certificate serves an informational purpose only and cannot confer any substantive rights on Plaintiff, it cannot serve as the written agreement required to afford Plaintiff primary status under Section C(2) of the Endorsement.

In short, Section C(2) of the Endorsement entitles Plaintiff to primary coverage only if a written contract provides for primary coverage, and neither the subcontract between Plaintiff and WPM,[6] the certificate of insurance, or any other document satisfies this requirement. Thus, the insurance available to Plaintiff as an additional insured is excess only. Neither party has introduced any evidence regarding the existence, and applicability to Mr. Opperman's claim, of competing insurance policies. While Plaintiff has not demonstrated that they do not exist, Defendant has not demonstrated that they do exist. The absence of evidence pertaining to the existence of other insurance policies that may provide primary coverage for the Opperman claim requires the Court to conclude as a matter of law that there is a possibility, though not a certainty, that the Section C(3) limitation precludes Plaintiff from coverage under the Policy as an additional insured. Because, like the B(1) limitation, the C(2) limitation leaves open the possibility that damages assessed against Plaintiff in the underlying Opperman lawsuit will be covered by the Policy, Plaintiff is entitled to summary judgment on its claim for a defense, but not its claim for indemnification.

---

[6]The subcontract itself merely requires that WPM "carry . . . employer's liability in accordance with [certain enumerated provisions]" and that "[a]ll policies for such coverage shall name Owner, Architect and Contractor as additional insureds." It does not specify whether the coverage available to Plaintiff should be excess or primary. (Dkt. No. 25 Ex. 2 ¶ B-1.)

16

### III. Conclusion

Plaintiff attempts to establish that it is entitled to coverage—indemnification and a defense—under the Policy as a matter of law both because it is an additional insured under the Endorsement, and/or because the subcontract agreement between Plaintiff and WPM is an "insured contract." However, because only "insureds" are entitled to coverage under the Policy, and because Plaintiff is not a named insured, the only relevant consideration is whether Plaintiff qualifies for coverage as an additional insured under the Endorsement, regardless of whether the subcontract between Plaintiff and WPM is an "insured contract." Though Plaintiff satisfies the three preliminary requirements for additional insured status, Plaintiff has not demonstrated as a matter of law that the limitations on coverage available to an additional insured in Sections B(1) and C(2) of the Endorsement are entirely inapplicable. For this reason, Plaintiff is not entitled to summary judgment on its claim for indemnification at this time. However, Plaintiff is free to renew its motion for summary judgment on its claim for indemnification after the jury in the underlying Opperman matter makes the relevant factual findings with respect to damages and fault allocation. Though Plaintiff has not demonstrated with certainty the inapplicability of the Section B(1) and C(2) limitations, Plaintiff has demonstrated that there is a possibility that neither Section B(1) nor C(2) will limit Plaintiff's entitlement to coverage. For this reason, Plaintiff is entitled to summary judgment on its claim for a defense under the Policy.

An order consistent with this opinion shall be entered.

Dated: January 27, 2010    /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE