UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KUMMER ENTERPRISES, INC.
f/k/a HBE CORPORATION,

    Plaintiff,

v.

CASE NO. 1:09-cv-109

HON. ROBERT HOLMES BELL

VALLEY FORGE INSURANCE
COMPANY,

    Defendant.
_____/

KUMMER ENTERPRISES, INC.
f/k/a HBE CORPORATION,

    Plaintiff,

v.

CASE NO. 1:10-cv-267

HON. ROBERT HOLMES BELL

THE CINCINNATI INSURANCE
COMPANIES,

    Defendant.
_____/

## O P I N I O N

On January 27, 2010, the Court granted partial summary judgment in favor of Plaintiff Kummer Enterprises, Inc. f/k/a HBE Corporation and against Defendant Valley Forge Insurance Co. ("Valley Forge"). (Dkt. No. 31.)[1] Specifically, the Court held that Valley

---

[1] Unless otherwise noted, all docket numbers in this opinion refer to the docket for the lead case, File No. 1:09-cv-109.

Forge is obligated to provide Plaintiff's defense in a personal injury action brought against Plaintiff by David Opperman and his wife in state court. (*Id.*) On March 17, 2010, Plaintiff filed a complaint seeking, *inter alia*, the same relief from Defendant Cincinnati Insurance Company ("Cincinnati"). (File No. 1:10-cv-267, Dkt. No. 1.) Plaintiff has now moved for summary judgment. (Dkt. No. 43.) Cincinnati opposes the motion and additionally moves to strike or continue Plaintiff's motion in order to provide time for discovery.[2] (Dkt. No. 46.)

**I. Factual Background**

In 2005, Plaintiff was awarded the general contract to build an addition to the Ingham Regional Medical Center in Lansing, Michigan. Plaintiff then subcontracted much of the work out to several subcontractors, including Total Foundations LLC ("Total"). In the subcontract ("Subcontract"), Total agreed to "furnish all labor, material, supervision, and equipment, tools, supplies, hoisting, and scaffolding necessary to fully complete the drilled concrete piers and concrete and reinforcing steel for piers . . . including column rebar dowels." (Dkt. No. 44, Pl.'s Br., Ex. 10, Subcontract 1.) That is, Total was required to drill three-foot diameter caisson holes, fill these holes with concrete up to two to three feet below the surface, and install rebar in each of these holes which extended one to two feet above the surface. As part of the Subcontract, Total also agreed "to indemnify, defend, and save [Plaintiff] harmless from any and all penalties, damages or other losses resulting from the

---

[2]Cincinnati has also made a counterclaim requesting a declaratory judgment finding and declaring that Cincinnati has *no* duty to defend or indemnify Plaintiff. (Dkt. No. 40.)

failure of [Total] to perform this Subcontract in accordance with [the Occupational Safety and Health Act of 1970 and its additions and supplements] or other more stringent requirements." (*Id.* at ¶ H-2.) Total also agreed to a general indemnification clause which provides that:

> To the fullest extent permitted by law, [Total] shall indemnify and hold harmless [Plaintiff] and agents and employees of [Plaintiff], from and against claims, damages, losses and expenses, including but not limited to attorney's fees arising out of or resulting from performance of [Total's] Work under this Subcontract, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or the injury to or destruction of tangible property, including loss of use resulting therefrom, but only if caused in whole or in part by negligent or intentional acts or omissions of [Total], [Total's] Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense caused by the active or passive negligence of a party indemnified hereunder, unless caused by the sole negligence of a party indemnified hereunder.

(*Id.* at ¶ G-1.)

The Subcontract also required Total to obtain general comprehensive liability insurance and to name Plaintiff as an "additional insured" under the policy. (*Id.* at ¶ B-1.) Total obtained Policy Number CAP5842309 (the "Policy") from Cincinnati. (Dkt. No. 49, Resp. 10.) The Policy was effective from July 27, 2005, through July 25, 2006, names Total as an insured, and allows for the existence of "additional insureds." Under the terms of the Policy, if Plaintiff is entitled to coverage as an additional insured and is sued by a party seeking damages to which the Policy applies, then Cincinnati has the right and the duty to defend it against that suit.

3

On December 5, 2005, David Opperman, an employee of one of Plaintiff's other subcontractors, injured his knee when he stepped in one of Total's caisson holes. On December 12, 2006, Mr. Opperman and his wife filed suit for his injuries against Plaintiff and several other parties including Total in Ingham County Circuit Court. (Dkt. No. 26, Ex. 2, Opperman Compl.) Plaintiff brought a third-party claim for indemnification against Total. In May 2008, the state court judge dismissed Total as a direct defendant because she found that Total did not owe a duty to Mr. Opperman. (*See* Dkt. No. 51, Reply, Ex. A, 05/14/2008 Hr'g Tr. 22:10-18.) The state court judge denied Total's motion for summary judgment on Plaintiff's third-party complaint. (*See id.* at 24:13-20.)

On three separate occasions, Plaintiff tendered its defense in the Opperman litigation to Cincinnati and requested indemnification under the Policy for any potential liability. (Pl.'s Br., Exs. 17, 20, 22, 23.) On the first two occasions, Cincinnati refused, (*id.*, Exs. 18, 19, 21), and Cincinnati did not respond to the third (*id.* at 12). Plaintiff now seeks a declaration from this Court that it is an additional insured under the Policy, that it has a direct contractual relationship with Cincinnati, that it has all rights to defense, coverage, and indemnification as provided in the Policy, that Cincinnati breached its duty to defend it in the Opperman litigation, that Cincinnati is responsible for its defense costs in that litigation, and that it is entitled to summary judgment on Cincinnati's counterclaim to the extent that that counterclaim purports to claim anything to the contrary. Cincinnati would have this Court strike or continue Plaintiff's motion as premature.

4

## II. Plaintiff's Motion for Summary Judgment

**A.)    Legal Standards**

In evaluating a motion for summary judgment under Rule 56, the Court must look beyond the pleadings and assess the proof. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). In considering a motion for summary judgment, the Court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). A fact is material if its proof or disproof might affect the outcome of the suit. *Reeves v. Swift Transp. Co.*, 446 F.3d 637, 640 (6th Cir. 2006). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and summary judgment will not be precluded simply by the existence of issues, even genuine issues, of *im*material fact.

In this motion for summary judgment, as distinguished from Plaintiff's earlier motion for summary judgment with respect to Defendant Valley Forge, (Dkt. No. 24), Plaintiff is not seeking an order declaring that Cincinnati must indemnify it. Rather, Plaintiff requests a declaration that it "has all rights to . . . indemnity as provided in the Policy." (Pl.'s Mot. 1.) By its terms, satisfying Plaintiff's request would not require the Court to determine the

precise bounds of the indemnification provided in the Policy or to determine to a certainty whether Plaintiff falls within those bounds under the facts of the underlying Opperman litigation. As noted in this Court's January 27, 2010, opinion, the legal standard governing Plaintiff's claim for indemnification is more burdensome than the legal standard governing Plaintiff's claim for a defense. To be entitled to summary judgment on a claim for indemnification, Plaintiff would be required to demonstrate that, as a matter of law, damages assessed against Plaintiff in the Opperman litigation will be covered by the Policy. On the other hand, to be entitled to summary judgment on its claim for a defense, Plaintiff must demonstrate that, as a matter of law, there is a *possibility* that damages assessed against Plaintiff in the Opperman litigation will be covered by the Policy. *Auto-Owners Ins. Co. v. Harrington*, 565 N.W.2d 839, 840 (Mich. 1997) (citing *Frankenmuth Mut. Ins. Co. v. Piccard*, 489 N.W.2d 422 (Mich. 1992) (Riley, J., plurality opinion)); *Regal Homes, Inc. v. CNA Ins.*, 171 P.3d 610, 615 (Ariz. App. 2007); *BP Air Conditioning Corp. v. One Beacon Ins. Group*, 33 A.D.3d 116, 120 (N.Y. App. Div. 2006). This "possibility" standard is a liberal one:

> The duty of the insurer to defend the insured . . . is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured *even arguably* come within the policy coverage. An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy. The duty to defend cannot be limited by the precise language of the pleadings. The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible. In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor.

6

*Citizens Ins. Co. v. Secura Ins.*, 755 N.W.2d 563, 566-567 (Mich. Ct. App. 2008) (emphasis in original) (quoting *Detroit Edison Co. v Michigan Mut. Ins. Co.*, 301 N.W.2d 832, 835 (Mich. Ct. App. 1980)). Under Michigan law, "all insurers [are] obligated to defend an action when a complaint alleges conduct that could arguably be covered by its policy." *Auto-Owners Ins. Co. v. Redland Ins. Co.*, 522 F. Supp. 2d 891, 899 (W.D. Mich. 2007) (citing *Polkow v. Citizens Ins. Co. of Am.*, 476 N.W.2d 382, 384 (Mich. 1991)).[3] Once a party is found to be an insured, and to the extent that an insurer is arguing that an exclusion applies, "the insurer must prove that an exclusion to coverage is applicable." *Heniser v. Frankenmuth Mut. Ins.*, 534 N.W.2d 502, 505 n.6 (Mich. 1995).

For the reasons that follow, the Court holds that, as a matter of law, there is a possibility that damages assessed against Plaintiff in the Opperman litigation will be covered by the Policy. Thus, Plaintiff is entitled to summary judgment on its claim for a defense.

**B.)    Analysis**

    **1.)    Plaintiff's status as an additional insured**

Plaintiff argues that it falls under the additional insured language of the Policy and thus has a direct contractual relationship with Cincinnati. Both parties cite and quote at length the relevant portions of the Policy which define additional insureds. Endorsement GA 472 10 01, for example, provides that

    SECTION II - WHO IS INSURED, 2. is amended to include:

---

[3] As noted in *Redland*, the duty to defend arises even when the relevant policy does not contain "right and duty to defend" language. 522 F. Supp. 2d. at 899.

7

e. Any person or organization, hereinafter referred to as ADDITIONAL INSURED: . . .
   (2) For whom you are required to add as an additional insured on this Coverage Part
under:
(1) A written contract or agreement . . .
but only with respect to liability arising out of "your work" performed for that additional insured by you or on your behalf.

(Pl.'s Br., Ex. 2, Policy CIN 51.) Likewise, Endorsement GA 233 08 02 provides that

(1) Any person or organization described in Paragraph 9.a.(2) below (hereinafter referred to as additional insured) whom you are required to add as an additional insured under this Coverage Part by reason of:
   (a) A written contract or agreement; . . . provided:
   (a) The written or oral contract or agreement is:
      1) Currently in effect or becomes effective during the policy period; and
      2) Executed prior to an "occurrence" or offense to which this insurance would apply; and
   (b) They are not specifically named as an additional insured under any other provision of, or endorsement added to, this Coverage Part.

(*Id.* at CIN 56.)

This language certainly seems to apply here. Under the Subcontract, Total was required to add Plaintiff as an additional insured, (*see* Subcontract ¶ B-1), the Subcontract became effective during the Policy's term, (*see id.* at 3; Resp. 10), and the Subcontract was executed prior to Mr. Opperman's injury. Cincinnati appears to concede that these provisions apply to include Plaintiff as an additional insured, and only contests whether Plaintiff is nonetheless barred from coverage. (*See* Resp. 10-14 (citing the above Policy provisions); Resp. 17 ("Cincinnati's additional insured endorsements exclude coverage from

8

the sole negligence of the additional insured.")).[4] Thus, the Court finds that Plaintiff is an additional insured under the Policy.

### 2.) Sole negligence exclusion and fault provision

Cincinnati argues first that Plaintiff is barred from coverage under the "sole negligence" exclusion in the Policy. (Resp. 17-18.) Under the Policy, the insurance coverage provided to an additional insured does not apply to certain damages arising out of the sole negligence of that additional insured. (*See* Policy, Form GA 472 10 01, §III, ¶ 4(a)(2) at CIN 52.) Likewise, Cincinnati argues that under the Subcontract, Total is required to indemnify Plaintiff for losses and expenses only to the extent of its (Total's) fault. (Subcontract ¶ G-1.) Cincinnati argues that the state court has established that other originally named defendants in the Opperman litigation, other than Plaintiff, can have no liability to the Oppermans as a matter of law.[5] (Resp. 17.) Thus, Cincinnati asserts, Plaintiff must be solely negligent and thereby barred from coverage under the Policy. (*Id.*) Likewise, Cincinnati asserts that the state court determination implies that Total cannot be at fault, and that Plaintiff is barred from coverage under the Subcontract. (*Id.* at 17-18.)

---

[4] Plaintiff would classify arguments to the contrary as "abandoned argument," (*see* Dkt. No. 51, Reply, 2-3), and rightly notes that "[f]ederal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003). While the Court agrees that Cincinnati has not argued this issue, and finds after reviewing the issue that Plaintiff is an additional insured under the Policy, this does not appear to be an abandoned argument but rather a proper concession.

[5] The Oppermans sued four parties, including Plaintiff and Total. (Pl.'s Br., Ex. 5, Second Am. Compl.)

9

Cincinnati misunderstands the implications of the state judge's determinations. The state judge determined that the Oppermans' negligence claim against Total failed because Total owed no duty to Mr. Opperman separate and distinct from the duty owed to Plaintiff.[6] (05/14/2008 Hr'g Tr. 22:10-18.) It does not necessarily follow that Total was in no way negligent or that Total's negligence did not contribute to Mr. Opperman's injury.[7] Indeed, the state judge specifically stated that Total may have contributed to Mr. Opperman's injury. (*Id.* at 24:15-17 ("I'm not dismissing the claim by HBE against Total Foundations based on the fact that the rebar wasn't added, and there is a question of whether or not . . . that might be some cause of the fall or contributed to the fall . . . .").) Additionally, this Court has already found that parties other than Plaintiff may have a share of the fault. (*See* Dkt. No. 30, 01/27/2010 Op. 11 ("It would be overreaching for the Court to purport to know how the jury will decide . . . fault allocation in light of the numerous parties involved, their various defenses, and the facts of the case, many of which are unknown to the Court and in dispute.").) In short, there is a possibility that the jury could find any number of parties, including Total, to be at fault, and nothing in the state court's determinations indicates the contrary. Accordingly, neither the Subcontract's indemnity provision nor the Policy's sole

---

[6] "[A] prima facie case of negligence requires a plaintiff to prove four elements: duty, breach of that duty, causation, and damages." *Fultz v. Union-Commerce Assocs.*, 683 N.W.2d 587, 590 (Mich. 2004).

[7] Under Michigan law, it is possible for a defendant to owe a plaintiff no duty, and thus not be liable to that plaintiff under the tort of negligence, even if the plaintiff's injuries result entirely from that defendant's negligence. *See Fultz*, 683 N.W.2d at 595-96 (Kelly, J., concurring).

negligence exclusion bars coverage at this stage or relieves Cincinnati of its duty to defend Plaintiff.

**3.) Completed operations exclusion**

Cincinnati argues that this case is distinguishable from the one resolved by this Court's January 27, 2010, opinion by the fact that under the Subcontract, Total has no safety responsibility for completed piers. (Resp. 10; Pl.'s Br., Ex. 19, 05/22/2006 Denial Letter.) Even assuming that is the case, the Court notes that the Subcontract also requires Total to "[f]urnish and place reinforcing steel including column rebar dowels," (Subcontract 1), and the state judge specifically found that rebar was not placed in the caisson hole which injured Mr. Opperman, (05/14/2008 Hr'g Tr. 24:16-17). Moreover, Plaintiff has introduced copious evidence, which Cincinnati has not refuted, indicating that Total had not completed its operations on the site at the date of the injury. Thus, Cincinnati has failed to meet its burden that the exclusion applies, and the possibility remains that damages assessed against Plaintiff in the Opperman litigation will be covered by the Policy.

**4.) Other insurance policies**

Cincinnati argues that the Policy includes a clause requiring its coverage to be excess other insurance, and that Plaintiff may have other insurance which would be primary to its coverage. (Resp. 18.) This Court faced this very issue with respect to Valley Forge. With respect to that matter, the Court determined that

> [T]he insurance available to Plaintiff [from Valley Forge] as an additional insured is excess only. Neither party has introduced any evidence regarding the existence, and applicability to Mr. Opperman's claim, of competing

> insurance policies. While Plaintiff has not demonstrated that they do not exist, Defendant has not demonstrated that they do exist. The absence of evidence pertaining to the existence of other insurance policies that may provide primary coverage for the Opperman claim requires the Court to conclude as a matter of law that there is a possibility, though not a certainty, that the Section C(3) limitation precludes Plaintiff from coverage under the Policy as an additional insured. Because, like the B(1) limitation, the C(2) limitation leaves open the possibility that damages assessed against Plaintiff in the underlying Opperman lawsuit will be covered by the Policy, Plaintiff is entitled to summary judgment on its claim for a defense.

(01/27/2010 Op. 16.) So too here, Plaintiff has not demonstrated that competing insurance policies providing coverage do not exist, and Cincinnati has not demonstrated that they do exist. Thus, the possibility remains open that damages assessed against Plaintiff in the underlying Opperman litigation will be covered by the Policy.

**C.) Conclusion regarding Plaintiff's Motion for Summary Judgment**

Plaintiff's motion for summary judgment requests that this Court declare that it is an additional insured under the Policy, declare that Cincinnati had and has a duty to defend Plaintiff in the Opperman litigation, and declare that Cincinnati breached that duty. Plaintiff requests summary judgment on Counts I, II, III, and IV of Cincinnati's counterclaim to the extent – and only to the extent – that those counts purport to claim that Plaintiff is not an additional insured under the Policy, that Cincinnati did not breach its duty to defend, and that Cincinnati is not responsible for Plaintiff's defense costs in the underlying Opperman Litigation. (Dkt. No. 43 ¶ d.)

Because there is a possibility that damages assessed against Plaintiff in the underlying Opperman litigation will be covered by the Policy, the Court will grant the motion. Plaintiff

does not request that the Court otherwise determine the bounds of the Policy or determine whether it is entitled to indemnity in the Opperman litigation. For the reasons contained herein, the Court would decline to do so even if requested.

### III. Cincinnati's Rule 56(f) Motion

Under Federal Rule of Civil Procedure 56(f),[8] a nonmovant may request additional discovery prior to the granting of summary judgment if that party "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition." Typically, when the parties have no opportunity for discovery, a Rule 56(f) motion will be granted. *See CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008). The reason for this is relatively simple: delaying summary judgment until parties have had a reasonable opportunity to compile an evidentiary record ensures that summary judgment will not be granted when there are undiscovered genuine issues of material fact which, if revealed, would preclude summary judgment. On the other hand, a court may reasonably deny a motion under Rule 56(f) if the moving party cannot "demonstrate with specificity that the material to be discovered would be relevant, dispositive, and non-duplicative." *Eastern Ky. Cardio. Surgery, P.S.C. v. Ashland Hosp. Corp.*, 119 F. App'x 715, 717 (6th Cir. 2004).

In this case, Cincinnati cannot so demonstrate. Under Michigan law, "[t]he duty of the insurer to defend the insured depends upon the allegations in the complaint of the third

---

[8] Under the December 1, 2010, revisions to the Federal Rules of Civil Procedure, the rule referenced herein is now Rule 56(d), and the text is slightly altered. However, insofar as it applies to Cincinnati's motion, the meaning is unchanged, and the Court will refer to the rule by its former designation in conformity with the briefs.

13

party in his or her action against the insured." *Protective Nat'l Ins. Co. v. Woodhaven*, 476 N.W.2d 374, 375 (Mich. 1991). Thus, nothing beyond the Oppermans' complaint is necessary to invoke the duty to defend. *See Pattison v. Emp'rs Reinsurance Corp.*, 900 F.2d 986, 988 (6th Cir. 1990) ("The insurer's duty to defend depends upon the potential shown in the complaint that the facts ultimately proved fall within the coverage." (applying Michigan law)).[9]

This duty arose under state law the moment that it became possible that damages assessed against Plaintiff in the underlying Opperman lawsuit would be covered by the Policy, and the duty continues until Cincinnati can demonstrate that the Policy will not cover the damages assessed. *Protective Nat'l*, 476 N.W.2d at 376 ("[I]t [is] the duty of [the insurer] to undertake the defense until it could confine the claim to a recovery that the policy did not cover."); *Redland Ins. Co.*, 522 F. Supp. 2d at 900 ("Even if [insurer] thought that it could successfully argue that there was no basis for coverage, it had the duty to defend until it could establish that argument."). Here, Cincinnati has not so demonstrated, so Cincinnati is in breach of its duty.

In short, Cincinnati's motion is supported by neither the policy behind nor the language of Rule 56(f). Rule 56(f) exists to protect parties which have not had sufficient time to conduct discovery. Although this case is new to federal court, the underlying litigation in state court has been ongoing for years, and Cincinnati has been aware of

---

[9] Even if such potential had not been shown on the face of the Oppermans' complaint, Cincinnati would still be under a duty "to look behind the third party's allegations to analyze whether coverage is possible." *Protective Nat'l*, 476 N.W.2d at 376.

14

Plaintiff's claim against it since 2006. Cincinnati has had more than ample opportunity to compile the minimal evidentiary record required to trigger or refute its duty to defend, and it is capable of presenting all facts essential to justify its opposition. All of the relevant facts are available, and they do not justify Cincinnati's opposition. The motion will be denied.[10]

## IV. Conclusion

For the reasons stated herein, Plaintiff's motion for summary judgment will be granted, and Cincinnati's motion to strike or continue will be denied. An order consistent with this opinion shall be entered.


Dated: February 23, 2011 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE

---

[10] The resolution of this matter may have been entirely different had Plaintiff been seeking summary judgment on its claim for indemnification. In that case, both the existence of other insurance and factual issues to be resolved at the state court trial could very likely have been relevant, dispositive, and non-duplicative.